UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUELINE VELEZ,

    Plaintiff,

v.                                                         CASE NO: 8:07-cv-1249-T-26TGW

SUNTRUST BANK,

    Defendant.
_____/

## **O R D E R**

Before the Court is Defendant SunTrust Bank's Motion for Summary Judgment (Dkt. 12) and Statement of Undisputed Facts (Dkt. 13), Plaintiff's Response in Opposition (Dkt. 25), and all the exhibits and deposition transcripts submitted by the parties. (Dkts. 24, 26-31). After careful consideration of the motion, the submissions of the parties, and the applicable law, the Court concludes that summary judgment should be denied.

Taking the facts in the light most favorable to the non-moving party, the Court finds that there are genuine issues of material fact regarding whether Plaintiff was discriminated against based on her pregnancy and was retaliated against, resulting in her termination. In April 2005, before Plaintiff Jacqueline Renner married and became Jacqueline Velez, she applied on-line for a position with SunTrust Bank (SunTrust). From May 2001 through January 2004, Plaintiff had previously worked with SunTrust as a Customer Sales Representative, which fact she omitted from her resume. Plaintiff was

interviewed by Barbara Niski for the position of Financial Service Representative (FSR) with SunTrust at its new Seven Oaks office in Wesley Chapel, Florida. Plaintiff was trained in a south Tampa office beginning June 5, 2006, before moving to the new branch office in Wesley Chapel, which opened July 24, 2006.

Some of the responsibilities of the position of FSR included maintaining a clutter-free work area with no drinks or snacks in the work area, keeping all non-client materials including books and binders out of the customer's view, greeting the customers cheerfully and maintaining the positive attitude throughout all dealings with the customers, and speaking to the customers in a calm, friendly tone of voice.[1] These responsibilities were set forth in the Quality Standards materials given to Plaintiff. Plaintiff was terminated,[2] according to SunTrust, for violations of these standards.[3]

---

[1] Specifically, the Quality Standards provide that the work area must be kept "clean, clutter-free, [and] business-like," and the personal appearance of the employee must be "professional" and "well-groomed." The Quality Standards prohibited eating, drinking, chewing gum, or smoking in the presence of clients. Co-workers and clients were to be spoken to in "calm, friendly tones without raising . . . voices."

[2] Before her initial 90-day probationary period of work ended, Plaintiff was terminated on July 27, 2006. Plaintiff was told by Ms. Niski and Ms. Miller that she was being terminated because of her poor attitude and not performing the job to her full potential, or, in Plaintiff's words— because she was not "smiley" or "jumping like a cheerleader."

[3] The decision to terminate Plaintiff was made by three individuals: Barbara Niski, the branch manager; Valerie Miller, the area manager; and Linda Chapman, the human resources representative. In addition to Ms. Niski's frequent observations of Plaintiff's demeanor, Valerie Miller avers that on two separate occasions, she witnessed Plaintiff's below par attitude. Valerie Miller had also provided coaching to Ms. Niski when she reported daily incidents to her. Ms. Miller listed the reasons for Plaintiff's termination as "her poor attitude, her disinterest, her failure to be respectful to her

Plaintiff admits she had been verbally reprimanded or coached on two occasions, particularly for not greeting the customers in a cheerful and outgoing manner and not displaying a cheerful attitude among co-workers.  Plaintiff was also told she could not have an open drink on her desk.  While Plaintiff does not recall being reprimanded for leaving used tissues on the floor at her desk, she recognized that she did have allergies and could see herself "honestly putting some tissues on the side and then going to go throw them away."  She admitted that she throws her tissues on the floor beside the couch at home.

Plaintiff claims, however, that all of SunTrust's problems with her performance began when she became pregnant one month after she was hired.  She claims she was not allowed to take as many snack and drinking breaks as she needed in view of her pregnant state.  She claims that two other employees were allowed to take smoke breaks upon request; yet, she was not permitted to take enough breaks.  Plaintiff claims that she was required to bring a physician's note in order to take more frequent breaks, unlike the smokers, and that she complied with the directive.  She also claims she was told to stop using her pregnancy as an excuse and that she might want to rethink her employment with SunTrust if she could not perform her job.  Perhaps the most questionable statement on

---

supervisors, her failure to improve her behavior after being coached and her failure to comply with SunTrust policies and procedures regarding workplace appearance, personal appearance, interaction with clients and co-workers, and overall attitude."

the part of SunTrust, if true, would be Ms. Niski's articulation that she was concerned about hiring a second woman who was trying to become pregnant because she would have difficulty arranging their work schedules.

In addition to the alleged unfair treatment of smokers versus pregnant women with regard to the number of breaks permitted, there exists a third possible comparator, Frances Santana. Although Ms. Santana was terminated for falsifying company records, Ms. Santana was given many more warnings and coached more frequently before she was terminated. Thus, Plaintiff asserts that she was treated more unfavorably than other fellow employees who were still within their 90-day probationary period. Finally, it is undisputed that Plaintiff's replacement was a non-pregnant female.[4]

In light of the record evidence, the Court is unable to conclude that Defendant is entitled to judgment as a matter of law at this juncture of the proceedings. Accordingly, it is therefore **ORDERED AND ADJUDGED** that Defendant SunTrust Bank's Motion for Summary Judgment (Dkt. 12) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on July 8, 2008.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[4] Although there is no discussion of damages, the Court notes that when she was terminated, Plaintiff had already lined up a job with PrimeAmerica. She worked there until January 2007, and had her baby February 18, 2007. In April 2007, she underwent gall bladder surgery, and was hired by Regions Bank on July 15, 2007, as a FSR.